UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. WALLER, | : | Case No. 1:08-cv-085 |
| Plaintiff, | : | Judge Sandra S. Beckwith |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| SHANNON BEAR, | : | |
| Defendant. | : | |

### REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 102) BE GRANTED; AND (2) THIS CASE BE CLOSED

This case is currently before the Court upon the motion for summary judgment of Defendant Shannon Bear (Doc. 102)[2] and the parties' responsive memoranda (Docs. 107 and 109). The case is ripe for the Court's review.[3]

### I.  FACTUAL BACKGROUND

Plaintiff is an inmate presently incarcerated at the Southern Ohio Correctional Facility ("SOCF") who brings this *pro se* action alleging that he sustained injuries as a result of Defendant's excessive use of force during a cell extraction. (Doc. 13).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Defendant Bear is the only remaining Defendant in this case. All other Defendants have been dismissed by the Court. (Doc. 14).

[3] There are also several non-dispositive motions pending before the Court including: Docs. 54, 74, 81, 82, 83, 86, 90, 91, 92, 93, and 94.

The allegations in the complaint arose from a June 21, 2007 cell extraction of Plaintiff. Plaintiff explains that on the day of the cell extraction he threw sour milk on another inmate who was coming out of the shower. (Doc. 101 at 12). The correction officer on duty told Plaintiff that he was going to be placed in protective control in the J2 block of the prison ("the hole"). (*Id*.) The officer then asked Plaintiff to turn around and submit to handcuffing ("cuff up"). (*Id*. at 22). Plaintiff refused and testified that he told the officer "F you, I ain't cuffing up." (*Id*.)

Because Plaintiff refused to submit to handcuffing, Lieutenant Howard, a correctional officer at SOCF, and Patrick Parsons, the crisis negotiator, approached Plaintiff's cell and attempted to persuade him to cuff up. (*See* DVD of Inmate Waller's Cell Extraction ("DVD")). The entire cell extraction, including the numerous attempts to persuade Plaintiff to cuff up, was recorded by the corrections officers. (*Id.*)

The relevant portions of the DVD are as follows: The crisis negotiator approached Plaintiff's cell and attempted to persuade him to cuff up. (*See* DVD). The negotiator and Lieutenant Howard noticed that Plaintiff was rubbing an unknown substance onto his body. (*Id*.) Plaintiff admitted that he poured baby oil onto his head and rubbed it into his face and chest. (Doc. 101 at 30-31). Thereafter, Lieutenant Howard approached Plaintiff again and ordering him to cuff up. (*See* DVD). Plaintiff again refused. (*Id*.) At that time, oleoresin capsicum ("OC") spray[4] was administered and the cell extraction team was assembled. (*Id*.)

---

[4] OC spray is also known as pepper spray.

Next, the extraction team was introduced on the DVD. (*See* DVD). Defendant Sergeant Shannon Bear presents as holding the shield. (*Id.*) The team then proceeded to Plaintiff's cell. (*Id.*) Plaintiff was given one final direct order to cuff up. (*Id.*) For the fourth time, Plaintiff refused. (*Id.*) The extraction team then began the process of physically removing Plaintiff from his cell. (*Id.* at 03:45).

Defendant Bear used the shield to protect the extraction team as they moved into Plaintiff's cell. (*See* DVD). As Defendant Bear moved toward the cell, the DVD shows Plaintiff running directly into the front of the shield trying to escape. (*Id.* at 03:46). The extraction team then moved into Plaintiff's cell and handcuffed and shackled him. (*Id.*) Plaintiff was then transferred from his cell to the J2 block. (*Id.*)

Pursuant to SOCF policy, a nurse was called to evaluate Plaintiff after the use of force. (*See* DVD at 48:40). Due to injury, Plaintiff was later transported to Corrections Medical Center for treatment. (*Id.*)

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A party may move for summary judgment on the basis that the

opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

"Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted) (*quoting* Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Because Plaintiff brings this case *pro se*, the Court construes the allegations very liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992). Indeed, "a *pro se* plaintiff's complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (quoting in part *Estelle*, 429 U.S. at 106). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences," *Morgan v. Church's Fried*

*Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and "*pro se* litigants are not exempted or excused from the Federal Rules governing pleading, dismissal for failure to state claims, and summary judgment." *Moore v. Holbrook*, 2 F.3d 697, 705 (6th Cir. 1993).

While a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, this standard, however, has limits. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The limits of this "liberal construction" nonetheless require a *pro se* plaintiff to establish each and every element of his claim. *Celotex*, 477 U.S. at 324. *See also Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986).

### III. ANALYSIS

Notwithstanding the prohibition against cruel and unusual punishment reflected in the Eighth Amendment, maintenance of prison security and discipline may occasionally require that inmates be subjected to physical contact actionable as assault under common law. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). However, the unjustified infliction of bodily harm to an inmate by a correctional officer gives rise to a claim under 42 U.S.C. §1983. *Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992) (quoting *Franklin v. Aycock*, 795 F.2d 1253 (6th Cir. 1986)). Liability will only be imposed, however, if the alleged bodily harm arises to the level of a constitutional violation. *Id.*

The infliction of pain in the course of a prison security measure does not amount to a constitutional violation simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable. *Whitley v. Albers,*

475 U.S. 312, 319 (1986). Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, they must be granted deference in the adoption and execution of prison policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Combs*, 315 F.3d at 557 (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992)). Thus, the standard in determining excessive force in violation of the cruel and unusual punishment clause of the Eighth Amendment is whether the force was used to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. at 6 (*citing Whitley*, 475 U.S. 312 at 319).

In determining the motivations of correctional officers, courts should consider the reasons for the application of force, the need for the force applied, and the extent of inflicted injury. *Caldwell*, 968 F.2d at 600. When considering these factors, inferences may be drawn as to whether the applied force could plausibly have been thought necessary or, instead, whether it evidences an unjustified infliction of harm. *Whitley*, 475 U.S. at 321.

  **A.**   **Whether The Cell Extraction Was A Justified Use Of Force**

Plaintiff's testimony and the Ohio Administrative Code establish that the cell extraction was a justified use of force. (Doc. 101 at 22; *see also* O.A.C. §5120-9-01(2)(c)).

Plaintiff admits that he refused to cuff up on three separate occasions. (Doc. 101 at 22). When asked during his deposition why he refused to cuff up, Plaintiff replied, "I guess I was being a stupid ass to be honest with you." (*Id.*) Two of the three refusals to cuff up are evidenced on the video of the cell extraction. (*See* DVD at 01:55 and 03:39). In addition to Plaintiff's admission in his deposition, he completed an Inmate Voluntary Use of Force Statement contemporaneously with the incident. In the statement Plaintiff stated "I don't want to talk about it. I messed up and they did what they had to do." (Doc. 102, Ex. B). Further, in the Chief Inspector's decision, he confirmed that Plaintiff admitted that the extraction team was called in because he refused to cuff up. (*Id.*, Ex. C).

According to the Ohio Administrative Code § 5120-9-01(2)(c), less-than-deadly force may be used "when necessary to control or subdue an inmate who refuses to obey prison rules, regulations, or orders." (Administrative Code Section, Exhibit A). As stated above, Plaintiff admitted on several occasions that he disobeyed a direct order by not cuffing up. (Doc. 101 at 22). Because Plaintiff disobeyed a direct order, Defendant Bear was justified in using less-than-deadly force to restore order in the prison.

**B. Whether Defendant Bear's Use Of Force Rises To The Level Of An Eighth Amendment Violation**

Not only was the cell extraction a justified use of force necessary to restore order to the prison, but the DVD proves that Defendant Bear complied with ODRC policies. As evidenced in the DVD, neither Defendant Bear nor any of the extraction team members punched Plaintiff in the face or kicked him as he alleges. Instead, the video shows a

struggle to gain control of Plaintiff, presumably as a result of the baby oil he applied to his head and chest. In fact, the DVD evidences that Plaintiff caused his own injuries by running into the shield during his attempt to escape the extraction team.

Furthermore, even if the struggle that ensued between Plaintiff and the extraction team in their attempt to handcuff him caused Plaintiff additional injury, that injury was justified and would not rise to the level of a constitutional violation. As discussed above, maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as "assault" under common law. *Combs v. Wilkinson*, 315 F.3d at 556. Furthermore, the application of force does not necessarily rise to an Eighth Amendment violation even when, in retrospect, that degree of force was unreasonable. *Whitley*, 474 U.S. at 319. Prison officials make their decisions in haste and under tremendous pressure. *Combs*, 315 F.3d at 557.

Here, Plaintiff made the cell extraction more difficult for Defendant Bear and the extraction team by coating himself in an oily substance which forced the extraction team to use more force than would normally be necessary to gain control of an inmate. Therefore, Plaintiff has failed to establish an Eighth Amendment violation.

    **C.    Whether Plaintiff's Injuries Evidence A Sadistic Or Malicious Intent**

Finally, Plaintiff's injuries do not evidence a sadistic or malicious intent. There is no evidence that Defendant Bear acted with malice to injure Plaintiff. Rather, the DVD shows Plaintiff running into the shield as he attempted to escape from his cell during the extraction. (*See* DVD at 03:46).

Plaintiff argues that he can prove malicious and sadistic intent, yet he sets forth no evidence establishing such intent. (Doc. 107). Instead, Plaintiff alleges that the DVD of his cell extraction was not actually recording during the assault. Specifically, Plaintiff contends that he was punched over 70 times by Defendant Bear during the 58 minutes that the camera was not recording due to loss of battery. (*Id*.) Plaintiff claims that he can prove that the video has been altered, since the video only shows him in the J2 block cell for approximately two minutes. (*Id.*) However, Plaintiff's allegations are disproven by the DVD timestamps.

Plaintiff first argues that 58 minutes passed before Lieutenant Howard resumed recording after loss of battery. (Doc. 107). During that time, Plaintiff alleges that he was hit over 70 times in two different cells. (*Id*.) The video timestamps, however, indicate otherwise.

According to the DVD, the cell extraction team began removing Plaintiff from his cell at 2:35 p.m. (*See* DVD at 02:16). The cell extraction was completed and Plaintiff was transported to J2 block within eight minutes. (*Id.* at 10:25). When Plaintiff reached the J2 block, Lieutenant Howard stated that the time was 2:42 p.m., which is evidenced by the timestamp on the video. (*Id*.) The nurse then came to inspect Plaintiff's face at the J2 block. (*Id.* at 10:36). After the inspection, Plaintiff was transported by gurney to the infirmary. (*Id.* at 21:04). Once Plaintiff reached the infirmary, Lieutenant Howard stated that the time was 2:55 p.m. and that taping had concluded. (*Id*.) This is evidenced by the timestamp, as it took approximately 11 minutes for the nurse to evaluate Plaintiff's face

and for the team to wheel Plaintiff down to the infirmary. (*Id* at 10:36, 21:04). According to Lieutenant Howard, taping began again at 3:07 p.m., at which time Plaintiff was still in the infirmary. (*See* DVD at 21:11). Therefore, according to Lieutenant Howard's stated time, only approximately 12 minutes passed before a new battery was retrieved.

The video and timestamps alone show that Plaintiff's argument is inaccurate. The video timestamps indicate that Lieutenant Howard's stated times are correct, and only 12 minutes passed before recording resumed. Plaintiff's claim that 58 minutes passed is unsubstantiated.

Plaintiff also failed to provide the court with any evidence that he was hit over 70 times in two different cells during the break in recording. To the contrary, the DVD evidences no differences in Plaintiff's injuries before or after the camera break. Prior to the camera break, the cameraman showed Plaintiff's face prior to him being placed on the gurney. (*See* DVD at 14:13). At that time, there were no visible bruises on Plaintiff's torso and little bleeding on his face. (*Id.*) The cameraman also showed Plaintiff's face and body after the break. Plaintiff was sitting up, and there were no visible bruises on his upper torso. (*Id.* at 21:07). Plaintiff's face looked exactly as it did prior to the cameraman shutting off the camera. (*Id.*) There was no additional bleeding, and Plaintiff

was not crying, yelling, or speaking. (*Id.*) Had Plaintiff been hit over 70 times and dragged to two different cells in less than 12 minutes, there would be physical signs of a beating. However, there were no changes to Plaintiff's condition.

Plaintiff also alleges that the DVD was altered because it only showed Plaintiff in the J2 cell for two minutes. (Doc. 107). Plaintiff claims that he was actually in J2 for approximately 15 minutes. (*Id.*) However, the DVD confirms that Plaintiff was in the J2 cell for at least nine minutes. Plaintiff was in the J2 cell for five minutes prior to the arrival of the nurse. According to Lieutenant Howard's stated times throughout the DVD, it took approximately three minutes for the nurse to arrive. Then, Plaintiff was evaluated while still in the J2 cell. (*See* DVD at 08:29, 14:17). The DVD shows Plaintiff in the J2 cell for more than two minutes. (*Id.*) Plaintiff provided no additional proof that the video was altered. Accordingly, Plaintiff has failed to establish a genuine issue of material fact.

The facts of the instant case are similar the facts in *Iacovone v. Wilkinson*, No. 2-03-cv-652, 2007 U.S. Dist. LEXIS 16071 (S.D. Ohio, Mar. 7, 2007). In *Iacovone*, this Court concluded that an inmate whose head was pushed against the wall during a cell extraction did not result in an unjustified use of force. *Id.* at 21-31. The inmate in *Iacovone* refused to position himself to be handcuffed in order to be moved to another cell. *Id.* After issuing several orders and making the consequences of noncompliance clear, prison officials sprayed pepper spray into the inmate's cell. *Id.* Subsequently, the inmate was informed that he was going to be removed from his cell by an extraction team.

*Id.* After being forcibly removed from his cell, the inmate began resisting and was pushed into the wall while being escorted down the hallway. *Id.* Iacovone's extraction was videotaped by the corrections officers and in determining that the extraction team did not use unnecessary or wanton force, cited Iacovone's admission that he disobeyed a direct order to face the wall and cuff up. *Id.* Additionally, the court found that the videotape clearly showed the need for application of force. *Id.*

Similarly, Plaintiff disobeyed several direct orders and was warned about the consequences of noncompliance. Specifically, Plaintiff admitted both that he refused to cuff up and that such refusal justifies use of force. (Doc. 101 at 36-37). Moreover, the DVD evidences Lieutenant Howard and crisis negotiator Patrick Parsons' attempts to persuade Plaintiff to cuff up. (*See* DVD). Additionally, prior to the extraction team entering his cell, Plaintiff was given one last opportunity to cuff up, but he refused. (*Id.*) Most importantly, it is clear from the DVD that Plaintiff's injuries occurred during his attempt to escape the extraction team. (*Id.*) Accordingly, Plaintiff cannot prove that the use of force was unnecessary or wanton.

It is also important to note that Defendant Bear was forced to make a split second decision, without the luxury of a second chance, to maintain his own safety and the safety of others by pushing Plaintiff with the shield. The Court is constrained to afford Defendant Bear "wide-ranging deference" in his efforts to preserve internal order and institutional security by forcing Plaintiff to obey a direct order. *See Combs*, 315 F.3d at 557. Even if the force used against Plaintiff were more than *de minimis*, it was neither

unnecessary nor wanton, occurring immediately after Plaintiff refused a direct order. The Court concludes that Defendant Bear tempered his response to fit the situation and did not use force that was wanton and unnecessary but instead applied the necessary force in a good-faith effort to maintain and to restore discipline. *Hudson*, 503 U.S. at 7.

The Court easily concludes that Defendant Bear did not use unnecessary or wanton force against Plaintiff while removing him from his cell on June 21, 2007. Indeed, Plaintiff admits that he disobeyed a direct order to "cuff up"; the videotape clearly shows the need for the application of force; and Defendant Bear made every effort to temper the severity of the force used.

Consequently, even when viewing the evidence in the light most favorable to Plaintiff, he cannot establish the existence of elements essential to his claim on which he bears the burden of proof at trial.

Based on these facts, Plaintiff's claims fail as a matter of law. Therefore, it is unnecessary for this Court to address whether Defendant Bear is entitled to qualified immunity.

### IV. CONCLUSION

Accordingly, **IT IS THEREFORE RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 102) be **GRANTED** and **THIS CASE BE CLOSED**.

Further, based on the recommended grant of summary judgment, the following motions should be **DENIED** as **MOOT**: Docs. 54, 74, 81, 82, 83, 86, 90, 91, 92, 93, and 94.

DATE: June 26, 2009   s/ Timothy S. Black
　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL A. WALLER,

      Plaintiff,                             Case No. 1:08-cv-085

  vs.                                    Judge Sandra S. Beckwith
                                         Magistrate Judge Timothy S. Black

SHANNON BEAR, *et al.*,

      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") **within 10 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections **within 10 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).